At Part \_\_\_ of the Supreme
Court of the State of New York,
held in and for the County of
New York, on the \_\_\_\_\_day of
January, 2017

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

ATLANTIC RESOURCE PARTNERS,
LLC d/b/a THE ATLANTIC GROUP,

                                        Plaintiff,

        - against -

JSB PARTNERS, LLC and JENNA
HIRSCH,

                                        Defendants.

Index No.: 650238/2017

**ORDER TO SHOW CAUSE**

        Upon reading and filing the annexed the Memorandum of Law, Affirmation of Kevin

J. O'Connor, Esq., dated the 17ᵗʰ day of January, 2017, and the exhibits annexed thereto, and

upon all of the pleadings and other papers in this proceeding, it is hereby

        **ORDERED**, that Defendants JSB Partners, LLC ("JSB Partners"), and Jenna Hirsch

("Hirsch") (collectively "Defendants"), show cause before this Court at I.A.S. Part \_\_\_\_, the

Honorable Justice_____, to be held at the Courthouse, located at 60 Centre Street,

New York, New York, on the \_\_\_\_\_ day of January, 2017, at \_\_\_\_\_ o'clock in the \_\_\_\_ of

that day, or as soon thereafter as counsel can be heard, why an Order should not be issued:

1) Enjoining Hirsch from violating her employment agreement with Atlantic
   Resource Partners, LLC d/b/a The Atlantic Group ("Atlantic Group") dated
   March 23, 2016, which contains non-competition and non-solicitation agreements
   (the "Agreement") by soliciting any employees or clients or unfairly competing
   with Atlantic Group;

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

2) Requiring that Defendants return to Atlantic Group any and all confidential data in their possession concerning Atlantic Group's operations and business;

3) Directing Hirsch and JSB Partners to cease and desist from any further solicitation of any current Atlantic Group employees or clients and candidates of Atlantic Group in violation of the Agreement;

4) Finding that Atlantic Group has a probability of success in establishing that Defendants have violated the Agreement by virtue of their actions in using Atlantic Group's confidential and proprietary information stolen by Hirsch to unfairly compete with Atlantic Group and by soliciting clients, candidates and employees of Atlantic Group with whom Hirsch worked while employed at Atlantic Group; and

4) Awarding Atlantic Group all other relief, at law or in equity, to which it may be entitled, or which the Court deems just, equitable and proper.

And it is further **ORDERED** that pending the return date herein, pursuant to CPLR

§6313(a), Defendants are temporarily enjoined and restrained from:

1) using any confidential data concerning Atlantic Group and its clients, prospective clients and/or candidates obtained by Hirsch during her employment at Atlantic Group;

2) soliciting contracts and/or business with any clients of Atlantic Group with whom Hirsch had any prior dealings with while employed by Atlantic Group, pending the hearing on Atlantic Group's application for a preliminary restraining order.

3) destroying any and all information in their possession, custody, or control which pertains to Atlantic Group and/or its clients or candidates, obtained by them during Hirsch's employment at Atlantic Group;

4) soliciting or recruiting any current Atlantic Group employees to work at JSB Partners in violation of the Agreement; and

5) destroying any computer evidence in their possession, custody, or control which pertains to Atlantic Group, Atlantic Group's clients, candidates, prospective candidates, business, or any contacts between JSB Partners and any current or past customers of Atlantic Group, whether such data exists on computer, tablet, iPhone, blackberry, PDA, or in any other form of medium.

And it is further **ORDERED**, that sufficient cause appearing therefore, let personal

service of a copy of this Order to Show Cause, together with the papers upon which it is

LAW OFFICES

Peckar &
Abramson

A Professional Corporation

2

granted upon Defendants, on or before _____, 2017, be deemed good and sufficient service thereof.

ENTER:

_____

LAW OFFICES

Peckar &
Abramson

A Professional Corporation

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

ATLANTIC RESOURCE PARTNERS,
LLC d/b/a THE ATLANTIC GROUP,

          Plaintiff,

    - against -

JSB PARTNERS, LLC and JENNA
HIRSCH,

          Defendants.

Index No.: 650238/2017

**AFFIRMATION OF KEVIN J.
O'CONNOR, ESQ. IN SUPPORT OF
ORDER TO SHOW CAUSE**

---

    **KEVIN J. O'CONNOR**, an attorney duly admitted to practice law before the Courts of this State, affirms the following under the penalty of perjury:

    1.    I am a shareholder with the law firm of Peckar & Abramson, P.C., attorneys for plaintiff, Atlantic Resource Partners, LLC d/b/a The Atlantic Group ("Atlantic"), against defendants, JSB Partners LLC ("JSB Partners") and Jenna Hirsch ("Hirsch") (collectively "Defendants"), in the captioned action. I submit this Affirmation in support of Atlantic Group's application by way of Order to Show Cause for a preliminary injunction and temporary restraining order as against Defendants.

    2.    This case concerns a former employee of Atlantic Group, Hirsch, who blatantly violated her employment agreement that she entered into with Atlantic Group, which contained confidentiality, non-competition, and non-solicitation agreements (the "Agreement"), as well as her duty of loyalty, by secretly attempting, directly and indirectly through JSB Partners, to "poach" other employees of Atlantic Group in an effort to unfairly compete with Atlantic Group and destroy its business and through the misappropriation of

LAW OFFICES

Peckar &
Abramson

A Professional Corporation

1

RIVEREDGE-#481309v1-

proprietary and confidential information.  A true and correct copy of the Verified Complaint, which was filed on January 13, 2017, is attached hereto as **Exhibit 1**.

3.      On or about March 23, 2016, Hirsch signed the Agreement as a condition of her employment with Atlantic Group. A copy of the Agreement is attached hereto as **Exhibit 2**.

4.      As set forth in the Verified Complaint, Hirsch was an employee of Atlantic Group until her resignation on or around January 10, 2017.  (See Complaint ("Cp."), Ex. 1, ¶ 30). A copy of Hirsch's resignation email from January 10, 2017 is attached hereto as **Exhibit 3**.

5.      Pursuant to the Agreement, Hirsch agreed to reasonable restrictions on her use of such proprietary and confidential materials, as well as reasonable restrictions on her post-employment activities, including restrictions on her abilities to compete with Atlantic Group and to solicit Atlantic Group's employees to leave Atlantic Group's employment during the non-solicitation period and/or solicit Atlantic Group's clients to end their business with Atlantic Group's employment during the non-competition period. (See Ex. 2).

6.      In or around mid-December 2016, Atlantic Group discovered that Hirsch had interviewed for a recruitment position at JSB Partners several months prior. (Cp., ¶ 23).

7.      At that point, or shortly thereafter, Atlantic Group also discovered that JSB Partners had made an official offer of employment to Hirsch and that Hirsch had colluded with Joseph Barr ("Barr"), JSB Partners' Chief Executive Officer ("CEO"), to "poach" certain Atlantic Group employees for employment at JSB Partners. (Id., ¶ 24).

8.      Attached hereto as **Exhibit 4** is a computer screenshot of an email exchange between Hirsch and Eva Minsteris ("Minsteris"), a Senior Managing Director at JSB Partners

LAW OFFICES

Peckar &
Abramson

A Professional Corporation

from September 2016, wherein the two discuss the scheduling of Hirsch's interview at JSB Partners.

9.　　Only two days after being contacted by Minsteris, Hirsch recommended to Minsteris that she "should reach out to Lindsay Raiser" ("Raider") another Atlantic Group Recruiter, but asked that Minsteris "don't tell her I told you." (See Ex. 4).  Minsteris then asked Hirsch for Raider's email address and Hirsch forwarded it saying "I know she isn't happy…not sure if she's looking." (Id.).

10.　　Following Hirsch's resignation, a review of Hirsch's email account, which review is ongoing, shows that Hirsch, while still employed by Atlantic Group, emailed with Barr and other partners/executives at JSB Partners, and enticed them to "poach" such employees. (Cp., ¶ 33).

11.　　Attached hereto as **Exhibit 5** are copies of computer screenshots of email exchanges between Hirsch and Barr.

12.　　On November 14, 2016, after receiving an offer from JSB Partners, Barr emailed with Hirsch in an attempt to persuade her to accept the offer. (Id.).

13.　　Hirsch asked if it would "be possible to wait a few months? [I] am awaiting some large pay…" (Id.).

14.　　A few days later, Hirsch asked Barr "why haven't you poached Joe Pitino" who is a Managing Director at Atlantic Group. (Id.). Barr responded by asking "is he poachable?" (Id.). Hirsch replied: "not sure haha. [I] love him though, so we will have to try!" (Id.).

15.　　Atlantic Group also learned that before leaving, Hirsch was alerting her client accounts, through email, that she was planning on leaving Atlantic Group, and forwarded them

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

her new contact information at JSB Partners, and was forwarded confidential information about those accounts to JSB Partners. (Cp., ¶35).

16.     Atlantic Group also later learned that Hirsch had been planning her resignation from Atlantic Group for months and was simply buying time in order to collect any commission that were due to her and to gain access to confidential information she would use at JSB Partners. (Id., ¶ 36).

17.     Atlantic Group's investigation, which is still ongoing, has thus far revealed that Hirsch has, as early as September 2016:

(a)     Directly and indirectly, through JSB Partners, attempted to poach Atlantic Group employees in direct violation of her duties of loyalty and the Agreement;

(b)     Spent company time to actively plan for her departures and unlawful competition with Atlantic Group;

(c)     Improperly accessed data belonging to Atlantic Group to which she had no authority to misappropriate, and misappropriated that data to herself and to JSB Partners with the expressed intention of illegally competing with Atlantic Group upon her departure; and

(d)     Actively planned to undermine Atlantic Group's relationships with its clients and search candidates by soliciting their business and forwarding her contact information t JSB Partners while still employed by Atlantic Group. (Id., ¶ 77).

18.     A prior application has not been made for the relief now requested.

**WHEREFORE**, for all of the foregoing reasons, as well as those expressed in the accompanying Memorandum of Law and the Verified Complaint filed against Defendants, a copy of which is attached hereto as Exhibit 1, it is respectfully requested that the Court grant a temporary restraining order pending return on Plaintiff's Order to Show Cause for a preliminary injunction; along with such other and further relief as may be just and proper.

Dated: New York, New York                    /s/ Kevin J. O'Connor

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

January 17, 2017                         Kevin J. O'Connor, Esq.

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

# EXHIBIT 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

ATLANTIC RESOURCE PARTNERS,
LLC d/b/a THE ATLANTIC GROUP,

                                        Plaintiff,

- against -

JSB PARTNERS, LLC and JENNA
HIRSCH,

                                        Defendants.

Index No: _____

Date Purchased: _____

**SUMMONS**

Plaintiff designates New York County as the place of trial.

The basis of venue is:
Pursuant to Contract

Plaintiff's address is: 8 West 38 Street, Suite 1200, New York, NY 10018.

TO:      JSB Partners, LLC
         747 3rd Ave., 15th Floor
         New York, NY 10017

         Jenna Hirsch
         21-67 33rd Street, Apt 4C
         Astoria, NY 11105

**YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to

serve a copy of your answer, or, if the complaint is not served with this summons, to serve a

notice of appearance, on the Plaintiff's attorney within 20 days after the service of this

summons, exclusive of the day of service (or within 30 days after the service is complete if

this summons is not personally delivered to you within the State of New York); and in case

of your failure to appear or answer, judgment will be taken against you by default for the

relief demanded in the complaint.

January 13, 2017
New York, New York

**PECKAR & ABRAMSON, P.C.**
Attorneys for Plaintiff

By: /s/ Kevin J. O'Connor
     KEVIN J. O'CONNOR
     41 Madison Avenue, 20th Floor

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

1

New York, New York 10010
(212) 382-0909

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

ATLANTIC RESOURCE PARTNERS,                    Index No. :
LLC d/b/a THE ATLANTIC GROUP,

                              Plaintiff,        **VERIFIED COMPLAINT**

          - against -

JSB PARTNERS, LLC and JENNA
HIRSCH,

                              Defendants.

Atlantic Resource Partners, LLC d/b/a The Atlantic Group "Atlantic Group"), by and
through its attorneys, Peckar & Abramson, P.C., as and for its Verified Complaint against
Defendants, JSB Partners LLC ("JSB Partners") and Jenna Hirsch ("Hirsch" and, with JSB
Partners collectively "Defendants"), hereby alleges as follows:

### PRELIMINARY STATEMENT

1.      This action arises out of JSB Partners' and Hirsch's brazen violations of
Hirsch's legal obligations owed to her former employer, Atlantic Group. During the several
months preceding her departure from Atlantic Group, Hirsch, who had been interviewing
with and had been in direct contact with several partners and executives at JSB Partners, took
steps to steal confidential and proprietary information, such as confidential client contact
lists, from Atlantic Group for purposes of her use at JSB Partners while still employed at
Atlantic Group thus breaching her fiduciary responsibilities and several covenants within her
employment agreement. Further, recently uncovered evidence shows that she also directly
and indirectly through JSB Partners attempted to "poach" other employees of Atlantic Group
in an effort to unfairly compete with Atlantic Group and destroy its business.

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

1

2.     Atlantic Group thus initiates this action to enjoin Defendants from any further improper activity, and to recover compensatory and punitive damages, together with attorneys' fees, costs and all other appropriate legal and equitable relief.

3.     This Court has personal jurisdiction of the Defendants as they were, at all times relevant, employed in the County of New York, and committed various torts in the County of New York. In addition, each Defendant engaged in commercial transactions taking place at least in party in this County, and each Defendant's conduct in those transactions is the subject of this action.

4.     In addition, this Court has jurisdiction over this action and over each Defendant because this action is brought pursuant to a written agreement between Atlantic Group and Hirsch, which identifies New York as the exclusive jurisdiction for any dispute between them and wherein Hirsch expressly agreed to submit actions such as this one to the courts of the State of New York, and to apply New York law.

## THE PARTIES

5.     At all times material hereto, Plaintiff Atlantic Group was and is a limited liability company organized under the laws of the State of New York, authorized to do business in the State of New York, and having offices at 19 West 34th St., Suite 806, New York, NY 10001.

6.     Defendant JSB Partners was and is a limited liability company organized under the laws of the State of New York, authorized to do business in the State of New York, having offices at 747 3'd Ave., 15th Floor, New York, NY 10017.

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

2

7.    Upon information and belief and at all material times hereto, Defendant Hirsch was and is a resident of the State of New York and is now employed at JSB Partners as a Vice President — Executive Recruiter.

### FACTS COMMON TO ALL COUNTS

8.    Atlantic Group is an executive search firm that was formed in 2005 and caters to accounting, operations and finance professionals Executive searches are concentrated predominantly on fund and corporate accounting, middle office and operations, tax and audit (both public and private), finance, marketing/investor relations, Fund of Funds operational and investment due diligence, executive administrators, and office support. Search capabilities include entry/staff level through CFO, COO, CCO and Director level professionals.

9.    Upon information and belief, JSB Partners is an executive search firm that caters to accounting, operations, tax, valuations, compliance, and investor relations professionals at all levels.

10.    As such, JSB Partners is a direct competitor of Atlantic Group in New York and elsewhere in the United States.

11.    Hirsch was employed at Atlantic Group as a Recruiter from in or about February 2016 to January 2017. She is now employed by JSB Partners as a Vice President-Executive Recruiter.

12.    On or about March 23, 2016, Hirsch signed an employment agreement that also contained non-competition and non-solicitation agreements (the "Agreement"). The Agreement is attached hereto as **Exhibit 1**.

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

3

13.   The Agreement expressly states that Hirsch was given access to confidential and proprietary information, defined therein, and that any violations of the Agreement would entitle Atlantic Group to injunctive relief before this Court.

14.   The Agreement further prohibits Hirsch from directly or indirectly soliciting any employee of Atlantic Group to separate from his or her employment relationship with Atlantic Group during her employment at Atlantic Group and for a period of eighteen (18) months thereafter.

## ATLANTIC GROUP'S LEGITIMATE AND PROTECTABLE INTERESTS

15.   Atlantic Group has legitimate, protectable business interests which justify the foregoing restrictive provisions of the Agreement, including, but not limited to: protection of Atlantic Groups trade secrets; and valuable confidential business information such as confidential customer lists, pricing lists, vendor lists, business plans, training materials, recruitment strategies, client solicitation templates, non-public personnel lists and other valuable data; preservation of substantial relationships with existing clients of Atlantic Group; established relationships with search candidates; and preservation of client goodwill associated with Atlantic Group's ongoing presence in New York and elsewhere in the United States.

16.   Commencing with its inception and continuing to the present, at considerable effort and expense, Atlantic Group have developed confidential and proprietary business information, including, but not limited to, client lists, detailed client contact information, client account information (e.g., identification of clients, business needs of clients, special needs of clients, and pricing models for marketing and production services), and information concerning Atlantic Group's business operations, business model, and marketing techniques.

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

4

17.   Atlantic Group has, over the years, also compiled detailed information concerning current, prospective, and inactive clients and search candidates that cannot be determined from public sources.

18.   As a Recruiter at Atlantic Group, Hirsch was in a position of trust and confidence. Hirsch had regular access to highly valuable, confidential and proprietary business information, including but not limited to candidate lists, prospective candidate lists, customer lists, pricing lists, vendors lists, business plans, training materials, recruitment strategies, client solicitation template and other client-related data such as client business needs, and non-public personnel lists.

19.   In no circumstances did Hirsch have authority to use information contained in Atlantic Group's database beyond that which she was specifically authorized and for which she required access in order to maintain her client accounts.

20.   Given the sensitive and high-level nature of Hirsch's position, and the substantial time, effort, and money Atlantic Group has spent, and Atlantic Group continues to spend, in protecting such proprietary and confidential information, Atlantic Group required Hirsch, as a condition of her employment, to execute the Agreement. The existence of the signed Agreement was the basis upon which Atlantic Group provided Hirsch with access to such highly confidential data.

21.   Pursuant to the Agreement, Hirsch agreed to reasonable restrictions on her use of such proprietary and confidential materials, as well as reasonable restrictions on her post-employment activities, including restrictions on her abilities to compete with Atlantic Group and/or solicit Atlantic Group's employees to leave Atlantic Group's employment during the

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

5

non-solicitation period and/or solicit Atlantic Group's clients to end their business with Atlantic Group's employment during the non-competition period.

22.   During the terms of Hirsch's employment, she maintained extensive and significant contacts with Atlantic Group's clients and candidates and was privy to valuable confidential, proprietary and sensitive business information of Atlantic Group, including but not limited to, Atlantic Group's: pricing structure, candidate, client and vendor lists, trade secrets, and business methods as aforesaid.

## DEFENDANT'S FLAGRANT VIOLATIONS OF THE AGREEMENT AND THE LAW

23.   In or around mid-December 2016, Atlantic Group discovered that Hirsch had interviewed for a recruitment position at JSB Partners.

24.   At that point, or shortly thereafter, Atlantic Group also discovered that JSB Partners had made an official offer of employment to Hirsch that Hirsch accepted and had agreed to a start date, and that Hirsch had colluded with Joseph Barr ("Barr"), JSB Partners' Chief Executive Officer ("CEO"), to "poach" other particular Atlantic Group employees for employment at JSB Partners.

25.   Atlantic Group opted to confront Hirsch and ask whether she intended to take the offer at JSB Partners. When they did, Hirsch denied any intentions of leaving Atlantic Group for JSB Partners, denied that she received or accepted an offer of employment at JSB Partners and denied helping JSB Partners poach other Atlantic Group employees.

26.   This was merely a ruse designated to give to Hirsch more time to effectuate her plan with Defendants, however.

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

6

27.   On or around January 2, 2017, a partner at Atlantic Group saw an offer letter to Hirsch from JSB Partners open to the public view, laying on top of Hirsch's personal belongings on her desk.

28.   Atlantic Group confronted Hirsch again and asked whether she intended to leave Atlantic Group to work for JSB Partners. Hirsch denied it again saying it was an old offer letter that must have made its way to the top of her belongings when she was looking for something else.

29.   On or around Monday, January 9, 2017, upon witnessing a complete drop-off in her production in the preceding week and continued disinterest in performing her job responsibilities, Hirsch was again asked whether she intended to leave Atlantic Group to work for JSB Partners. Atlantic Group told her to take the rest of the day off to think about her decision and to let them know the next morning.

30.   On or around January 10, 2016, Hirsch sent in her resignation letter to Atlantic Group via email.

31.   In response to her email, John Ricco ("Ricco"), a Partner at Atlantic Group, wrote to Hirsch:

> "I do have to say please review your employee docs especially the parts regarding non-compete and non-solicit. It would be unfortunate to hear about any [Atlantic Group] info pertaining to candidates and clients being discussed at JSB as we will find out."

32.   In response to Ricco's email, Hirsch wrote: "[o]f course I intend to abide by the law. I would never do that and have no malicious intent."

33.   However, a review of Hirsch's email account, which review is ongoing, revealed that Hirsch, while still employed by Atlantic Group, forwarded Atlantic Group

LAW OFFICES

Peckar &
Abramson

A Professional Corporation

7

employees' contact information to Barr and other partners/executives at JSB Partners, enticing them to "poach" such employees.

34. Hirsch also sent numerous text messages, while employed at Atlantic Group, to certain Atlantic Group employees enticing them to leave Atlantic Group to work at JSB Partners.

35. Atlantic Group also learned that before leaving, Hirsch was alerting her client accounts, through email, that she was planning on leaving Atlantic Group, and was forwarding confidential information about those accounts to JSB Partners.

36. Atlantic Group also later learned that Hirsch had been planning her resignation from Atlantic Group for months and was simply buying time in order to collect any commission that were due to her and to gain access to confidential information she would use at JSB Partners.

37. Upon information and belief, JSB Partners actively conspired with Hirsch in an attempt to steal confidential and proprietary information from Atlantic Group for JSB Partners to use in unfair competition against Atlantic Group.

38. Upon information and belief, JSB Partners actively conspired with Hirsch in an attempt to "poach" Atlantic Group employees to work at JSB Partners.

39. The above actions by Hirsch constitute violations of the Agreement.

40. Paragraph 2 of the Agreement provides:

> "Employee acknowledges that, in the course of employment with the Company, Employee will receive confidential and proprietary information of the Company, its Affiliates (defined herein), its Protected Parties (defined below), and third parties to which the Company has an obligation of confidentiality. Accordingly, during and at all times after Employee's employment by the Company, Employee agrees to keep strictly confidential and not to disclose or make accessible to any other

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

8

person, firm, corporation or other entity or use for any purpose
other than to fulfill Employee's duties to Company, any
Confidential and Proprietary Information (defined herein)
owned by, or received by or on behalf of, the Company." (See
Ex. 1 hereto).

41. Pursuant to Paragraph 2(b) of the Agreement, Hirsch was to return all

confidential and proprietary information to Atlantic Group upon her departure. (Id.).

42. Paragraph 3 of the Agreement provides:

"Employee agrees not to, directly or indirectly, including on
behalf of, for the benefit of, or in conjunction with any other
person or entity, engage in certain restricted activities as
follows:

b. Non-Solicitation; No-Hire; Non-Interference. During
Employee's employment and for eighteen (18) months
thereafter, regardless of the reason for separation from
employment, Employee shall not:

i. solicit, assist, advise, influence, induce or otherwise
encourage in any way any Restricted Party (defined herein) to
separate from his or her employment or consulting relationship
with the Company;

ii. assist, advise, or encourage any person or entity to solicit,
assist, advise, influence, induce or otherwise encourage in any
way any Restricted Party to separate from his or her
employment or consulting relationship with the Company;

iii. employ or retain as a consultant or advisor any Restricted
Party;

iv. assist any person or entity to employ or retain as a
consultant or advisor any Restricted Party."

43. The Agreement defines a "Restricted Party" as "means any person who or

entity employed or engaged by the Company within eighteen (18) months of Employee's

employment by Company." (Id.).

44. Upon information and belief, Defendants have been conspiring and/or

collaborating in violation of the terms of the Agreement to, inter alia: (1) obtain Atlantic

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

9

Group's candidate, client and vendor lists; (2) contact and solicit clients and candidates from said lists and using confidential and proprietary data from Atlantic Group's computers; (3) diverting existing and future business of Atlantic Group by causing its clients to transfer their accounts to JSB Partners; and (4) attempting to poach Atlantic Group employees to join JSB Partners.

45.    Hirsch was reminded of her obligations under the Agreement via email by Ricco on or about January 10, 2017.

46.    In addition to the disruption to its operations, Atlantic Group will be required to incur significant costs to repair and ensure the integrity of its databases and servers by changing passwords, investigating the matter, and taking other necessary corrective action, including purchasing expensive software to ensure such breaches do not go unnoticed by future unscrupulous employees.

47.    It is apparent under the circumstances that Hirsch has violated her obligations to Atlantic Group and her fiduciary, professional, and common law obligations, by, among other things, disclosing highly confidential and proprietary client information to JSB Partners, and possibly others, which has resulted in the solicitation of Atlantic Group employees to JSB Partners and may result in the solicitation and diversion of Atlantic Group's clients and candidates to JSB Partners, in direct violation of Hirsch's obligations to Atlantic Group.

48.    As a result of the Defendants' improper actions, including, but not limited to, Defendant' misappropriation of Atlantic Group's trade secrets, proprietary and confidential information, and client and candidate list(s), and direct solicitation of Atlantic Group's existing clients, candidates, and employees, all in violation of the terms of the Agreement, Atlantic Group has incurred, and continued to incur, significant damages and irreparable harm.

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

10

## FIRST CAUSE OF ACTION
### (Conversion as Against All Defendants)

49.   Atlantic Group repeats and realleges each and every allegation set forth in paragraphs 1 through 48 hereof as if fully set forth at length herein.

50.   Defendants' conduct as alleged herein has resulted in unlawful and wrongful assumption of control over, and conversion of, Atlantic Group's property and/or confidential information.

51.   Atlantic Group has the right to recover possession of its property and/or confidential information.

52.   Defendants have failed to return Atlantic Group's property and/or confidential information, despite lawful demand.

53.   As a consequence of the foregoing conduct, Atlantic Group has been injured, for which it is entitled to recover compensatory and punitive damages and interest in an amount as the proof at trial may warrant.

## SECOND CAUSE OF ACTION
### (Breach of Fiduciary Duties as Against Hirsch)

54.   Atlantic Group repeats and realleges each and every allegation set forth in paragraphs 1 through 53 hereof as if fully set forth at length herein.

55.   Hirsch were employed by Atlantic Group in a position of trust and confidence.

56.   Both during and after her employment with Atlantic Group, Hirsch owed certain fiduciary duties to Atlantic Group, including, but not limited to, a duty of loyalty and honesty.

57.   By virtue of these duties, Hirsch was and is prohibited from acting in a disloyal manner, or in any way inconsistent with that trust relationship.

58.   Hirsch was and is bound to treat Atlantic Group's proprietary and confidential information as the lawful property of Atlantic Group, and to not disclose such information to

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

11

third parties, or to use such information on her own account or on account of other third parties, firms and/or entities.

59.    Notwithstanding these obligations and duties, and in violation thereof, Hirsch has engaged and continue to engage in, inter alia, disloyal and untrustworthy conduct by misappropriating and/or retaining Atlantic Group's confidential and proprietary information and attempting to unlawfully steal Atlantic Group's clients and poach Atlantic Group's employees.

60.    As a consequence of Hirsch's foregoing intentional breaches of her fiduciary duties to Atlantic Group, Atlantic Group has been injured, for which it is entitled to recover disgorgement of salary, benefits and other payments to each of them during their period of disloyalty, as well as compensatory and punitive damages and interest in an amount as the proof at trial may warrant.

**THIRD CAUSE OF ACTION**
**(Breach of Duty of Loyalty As Against Hirsch)**

61.    Atlantic Group repeats and realleges each and every allegation set forth in paragraphs 1 through 60 hereof as if fully set forth at length herein.

62.    Hirsch was employed by Atlantic Group in position of trust and confidence.

63.    Both during and after her employment with Atlantic Group (by virtue of her continuing duties under contract), Hirsch owed Atlantic Group a common law duty of loyalty. By virtue of these duties, Hirsch was and is prohibited from acting in a disloyal manner, or in any way inconsistent with the employment relationship she maintained with Atlantic Group.

64.    Hirsch was bound to treat Atlantic Group's proprietary and confidential information as property of Atlantic Group; not to disclose such information to third parties, or to use such information on her own account or on account of other third parties, firms and/or

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

12

entities; and not to act contrary to Atlantic Group's interests during her employment with Atlantic Group.

65.     Notwithstanding these obligations and duties, and in violation thereof, Hirsch has engaged and continues to engage in, inter alia, disloyal conduct by misappropriating and/or retaining Atlantic Group's confidential and proprietary information and conspiring to raid Atlantic Group's employee and client base.

66.     During her period of loyalty, Hirsch was paid commissions and received other benefits to which she was not entitled under the Faithless Servant Doctrine, and for which she is now obligated to return same to Atlantic Group.

67.     Hirsch blatantly violated these duties by attempting to divert business opportunities and Atlantic Group employees to herself and her new employer while she was still employed with Atlantic Group.

68.     As a consequence of the foregoing, Atlantic Group has been injured, for which it is entitled to recover compensatory and punitive damages and interest in an amount as the proof at trial may warrant.

### FOURTH CAUSE OF ACTION
### (Misappropriation As Against All Defendants)

69.     Atlantic Group repeats and realleges each and every allegation set forth in paragraphs 1 through 68 hereof as if fully set forth at length herein.

70.     Defendants intentionally and wrongfully misappropriated Atlantic Group's property including, inter alia, its proprietary and confidential business and client information, for the benefit of all Defendants and to Atlantic Group's detriment.

71.     Atlantic Group took reasonable steps to protect and maintain the secrecy of its proprietary and confidential business and client information.

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

13

72. Defendants have failed to return Atlantic Group's property despite Hirsch's obligations to Atlantic Group.

73. As result of the intentional and wrongful conduct of Defendants, Atlantic Group has been injured, for which it is entitled to recover compensatory and punitive damages and interest in an amount as the proof at trial may warrant.

**FIFTH CAUSE OF ACTION**
**(Breach of Contract as Against Hirsch)**

74. Atlantic Group repeats and realleges each and every allegation set forth in paragraphs 1 through 73 hereof as if fully set forth herein.

75. This is an action for breach of contract against Hirsch.

76. Atlantic Group has performed all of its duties and obligations Hirsch under the Agreement.

77. Commencing no later than December 2016, and through the present, Hirsch has breached the express and implied terms of the Agreement by, inter alia:

(a) Conspiring to poach Atlantic Group employees in direct violation of her duties of loyalty and the Agreement;

(b) Spending company time to actively plan for her departure and unlawful competition with Atlantic Group;

(c) Improperly accessing data belonging to Atlantic Group to which Hirsch had any authority to misappropriate, and misappropriated that data to herself with the expressed intention of illegally competing with Atlantic Group upon her departures; and

(d) Actively planning to undermine Atlantic Group's relationships with its clients by soliciting their business from Atlantic Group while employed there by, among other things, forwarding her contact information at JSB Partners with the intention that such client accounts move their business from Atlantic Group to JSB Partners.

78. Hirsch is liable to Atlantic Group for her breach of the Agreement.

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

14

79.   As a direct and proximate result of Hirsch's breaches of the Agreement, as specified herein, Atlantic Group has suffered damages and continues to suffer irreparable harm and is entitled to damages to be proven at trial, together with pre judgment interest and costs.

## SIXTH CAUSE OF ACTION
### (Unfair Competition As Against All Defendants)

80.   Atlantic Group repeats and realleges each and every allegation set forth in paragraphs 1 through 79 hereof as if fully set forth herein.

81.   By reason of the unlawful, improper, malicious and tortious conduct of Defendants, said parties have engaged in, and continue to engage in, unfair competition against Atlantic Group in violation of the law of the State of New York.

82.   As a result of the foregoing, Atlantic Group has been caused to suffer damages, including severe financial losses, loss of good will and reputation, compensatory and special damages, and lost profits.

## SEVENTH CAUSE OF ACTION
### (Tortious Interference with Existing and Prospective Clients As Against Defendants)

83.   Atlantic Group repeats and realleges each and every allegation set forth in paragraphs 1 through 83 hereof as if fully set forth herein.

84.   This is an action against Defendants for tortious interference with Atlantic Group's existing and potential business relationships.

85.   Atlantic Group had and has continuing business relationships with its clients and candidates within the State of New York and elsewhere in the United States, which relationships were disclosed to Hirsch solely through her employment with Atlantic Group.

86.   Hirsch, during and subsequent to the time she was employed by Atlantic Group, had and has knowledge of such continuing business relationships as between Atlantic Group and its clients.

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

15

87.   As set forth above, Defendants actively conspired to, and did, intentionally and unjustifiably interfere with Atlantic Group's business relationships by, inter alia, (a) obtaining Atlantic Group's confidential client data during Hirsch's employment at Atlantic Group; (b) contacting and soliciting clients and candidates from said lists during Hirsch's employment prior to departing Atlantic Group; (c) diverting existing and future business of Atlantic Group by causing Atlantic Group's clients and candidates to transfer their accounts to JSB Partners; and (d) conspiring and/or collaborating with each other and JSB Partners, in violation of the terms of the Agreement, to carry out the foregoing actions.

88.   Atlantic Group has suffered and continues to suffer damages as a result of Defendants' intentional interference with Atlantic Group's existing and prospective business relationships with its clients, including severing relationships with present clients and/or potential relationships with future clients now being solicited by Defendants through such unlawful means.

## EIGHT CAUSE OF ACTION
### (Preliminary and Permanent Injunctive Relief As Against Defendants)

89.   Atlantic Group repeats and realleges each and every allegation set forth in paragraphs 1 through 88 hereof as if fully set forth herein.

90.   This is an action for injunctive relief against Defendants.

91.   Atlantic Group has suffered and continues to suffer irreparable harm as a result of Defendants' improper actions in violation of the Agreement, which infringe upon Atlantic Group's legitimate business interests, including, but not limited to, protection of Atlantic Group's trade secrets; protection of valuable confidential business information of Atlantic that does not otherwise qualify as trade secrets; confidential customer and candidate lists; pricing lists; vendor lists; marketing materials case studies, non-public personnel lists, P&L reports, budgets, business plans; training materials; recruitment strategies; client solicitation templates

16

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

and other client data; and preservation of client goodwill associated with Atlantic Group's ongoing presence in New York and elsewhere in the United States.

92.   Hirsch's improper actions, which were and are being conducted with the active participation of JSB Partners, constitute harm of a continuing nature for which Atlantic Group has no adequate remedy at law. The misappropriation and/or unauthorized use of Atlantic Group's valuable trade secrets, client list(s), sensitive and proprietary business information, and confidential business methods cannot be compensated by a mere money judgment.

93.   There is a substantial likelihood of success on the merits of Atlantic Group's claims against Defendants, as set forth herein, as Atlantic Group has a clear right to the relief requested herein. Under New York law, the unauthorized use of trade secrets, customer lists, or direct solicitation of existing candidates and/or clients is presumed to be an irreparable injury and may be specifically enjoined.

94.   The public interest is served by granting the relief requested herein, as individuals should not be allowed to misappropriate the intellectual property of others for their own benefit, especially in the case here, where Hirsch specifically agreed to refrain from the actions which gave rise to the Atlantic Group's claims herein.

95.   As such, Atlantic Group is entitled to preliminary and permanent injunctions enjoining Defendants from utilizing Atlantic Group's proprietary and confidential information, or contacting Atlantic Group's customers, in violation of the Agreement, or applicable statutory or common law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Atlantic Group prays that judgment be entered in its favor and against Defendants for relief as follows:

(A)   Compensatory damages in an amount to be determined at trial;

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

17

(B)     Punitive damages in an amount to be determined at trial;

(C)     Payment of attorneys' fees and costs;

(D)     Preliminary and permanent injunctive relief as set forth above;

(E)     Pre- and post-judgment interest as allowed by law; and

(F)     All other and further relief, at law or in equity, as this Court may deem just and proper.

Dated:  New York, New York
        January 13, 2017

                                PECKAR & ABRAMSON, P.C.

                                By: /s/ Kevin J. O'Connor
                                    KEVIN J. O'CONNOR
                                    41 Madison Avenue, 20th Floor
                                    New York, New York 10036
                                    (212) 382-0909
                                    Attorneys for Plaintiff,
                                    Atlantic Resource Partners, LLC d/b/a
                                    The Atlantic Group

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

18

## VERIFICATION

STATE OF NEW YORK    )
                          ) ss.:
COUNTY OF NEW YORK  )

**RICHARD SCARDINA**, being duly sworn deposes and says:

1. Deponent is the Co-Founder of plaintiff, Atlantic Resource Partners, LLC d/b/a The Atlantic Group ("Atlantic Group").

2. Deponent is authorized to verify this pleading on behalf of Atlantic Group.

3. I have read the foregoing "Verified Complaint" and know the contents thereof; the same is true to my own knowledge.

4. The grounds of Deponent's belief as to all matters not stated upon Deponent's knowledge are as follows: statements, books and records contained in Atlantic Group's records and files.

Dated:  January 13, 2017

                                                    RICHARD SCARDINA

Sworn to before me this 13th
day of January, 2017

**BRIAN A. SAUM**
NOTARY PUBLIC OF CONNECTICUT
My Commission Expires 10/31/2021

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

19

# EXHIBIT - 1



ATLANTIC GROUP

## PROTECTION OF COMPANY PROPERTY AND AGREEMENT TO ARBITRATE

THIS AGREEMENT ("Agreement") is effective as of March 22, 2016 ("Effective Date") and is between Atlantic Resource Partners, LLC ("Company") and Jenna Hirsch ("Employee") (Company and Employee collectively, "Parties"). In consideration of the promises and mutual covenants contained herein, including without limitation the Company's employment of Employee and Employee's work for the Company, and for other good and valuable consideration, the receipt and sufficiency of which are acknowledged, the Parties agree as follows:

1. Prohibited Activities. While employed with the Company, Employee shall not be employed by, serve as a consultant or advisor to (whether paid or unpaid), invest in (other than a direct or indirect 5% or less passive personal investment in a publicly traded company), prepare to engage in employment or other business activity competitive with the Company, or otherwise engage in any other business or work activity, without the advance written consent of Richard Scardina. The above prohibition shall not include volunteering for charitable organizations, religious activities, engaging in lawful political activities, or the like.

2. Confidential and Proprietary Information. Employee acknowledges that, in the course of employment with the Company, Employee will receive confidential and proprietary information of the Company, its Affiliates (defined herein), its Protected Parties (defined below), and third parties to which the Company has an obligation of confidentiality. Accordingly, during and at all times after Employee's employment by the Company, Employee agrees to keep strictly confidential and not to disclose or make accessible to any other person, firm, corporation or other entity or use for any purpose other than to fulfill Employee's duties to Company, any Confidential and Proprietary Information (defined herein) owned by, or received by or on behalf of, the Company. Employee further agrees as follows:

   a. Protectable Interests; Trade Secrets. Employee acknowledges the trade secret status of the Confidential and Proprietary Information and that the Confidential and Proprietary Information constitutes a protectable business interest of the Company. Employee agrees (i) not to use, access, or allow or help another to use or access (whether for compensation or not) any Confidential and Proprietary Information for the benefit of Employee or others (other than the Company); and (ii) not to take, copy, email, download, or otherwise utilize any material or reproductions (including but not limited to writings, correspondence, notes, drafts, records, invoices, technical and business policies, computer programs or disks) thereof owned, licensed, or otherwise under the control of the Company. The obligations described in this paragraph apply any time during or after Employee's employment by Company, except necessary for Employee to perform Employee's duties for the Company, and then conditioned upon the prompt return of all originals and reproductions thereof (in whatever form).

Page 1

ATLANTIC GROUP

b. <u>Return of Property</u>. Employee agrees, immediately upon the Company's request, and in any event immediately upon termination of Employee's relationship with the Company, to return to the Company all Confidential and Proprietary Information and reproductions (including but not limited, to writings, correspondence, e-mails, notes, downloads, drafts, records, invoices, technical and business policies, computer programs or disks) thereof in Employee's possession or control, including, without limitation, any copies of such Confidential and Proprietary Information that may reside on any computer Employee may access, own or otherwise control (each a "Controlled Computer") or on any computer server used to provide an e-mail mail box (each a "Controlled Mail Box") to which Employee has access pursuant to any Internet or electronic mail service to which Employee subscribes or has access to a subscription (Employee acknowledges for all purposes hereunder that any such Controlled Mail Box shall be deemed to be under Employee's control).

c. <u>Disclosures</u>. At any time, if in any legal or regulatory proceeding Employee is requested or ordered to disclose any of the Confidential and Proprietary Information, whether or not Employee is employed by the Company, Employee will provide the Company with prompt notice so that the Company, whether aided by Employee or as an intervenor, may seek to prevent disclosure or, if that cannot be achieved, the entry of a protective order or other appropriate protective device or procedure in order to assure, to the extent practicable, compliance with the provisions of this Agreement. If a protective order or other remedy satisfactory to the Company is not obtained, Employee will disclose only that portion of the Confidential and Proprietary Information that Employee is advised by counsel is legally required to be disclosed (and will provide a copy of any written memorandum in that connection to the Company or its counsel as part of a common defense), and Employee will exercise Employee's best efforts to obtain a written protective order or other reliable assurance that confidential treatment shall be accorded that portion of the Confidential and Proprietary Information.

3. <u>Protection of Other Company Interests</u>. Employee agrees not to, directly or indirectly, including on behalf of, for the benefit of, or in conjunction with any other person or entity, engage in certain restricted activities as follows:

a. <u>Non-Competition</u>. During Employee's employment and for three (3) months thereafter, regardless of the reason for separation from employment, Employee shall not, directly or indirectly, including on behalf of, for the benefit of, or in conjunction with, any other person or entity: (i) engage in, own, manage, operate, join, control, participate in, invest in (other than a direct or indirect 5% or less passive personal investment in a publicly traded company) or otherwise be connected or associated with, in any manner, including as an officer, director, employee, independent contractor, independent representative, partner, consultant, advisor, agent, proprietor, trustee or investor, any Competitive Enterprise (defined herein).

Page 2

ATLANTIC GROUP

b. Non-Solicitation; No-Hire; Non-Interference. During Employee's employment and for eighteen (18) months thereafter, regardless of the reason for separation from employment, Employee shall not:

   i. solicit, assist, advise, influence, induce or otherwise encourage in any way any Restricted Party (defined herein) to separate from his or her employment or consulting relationship with the Company;

   ii. assist, advise, or encourage any person or entity to solicit, assist, advise, influence, induce or otherwise encourage in any way any Restricted Party to separate from his or her employment or consulting relationship with the Company;

   iii. employ or retain as a consultant or advisor any Restricted Party;

   iv. assist any person or entity to employ or retain as a consultant or advisor any Restricted Party;

   v. interfere with, attempt to interfere with, or assist, advise, or encourage any person with interfering with the relationship between the Company and any Restricted Party.

4. Protection of Reputation. During and at all times after Employee's employment with the Company, regardless of the reason for separation from employment, Employee shall not publish or communicate to any person or entity any Disparaging (defined herein) remarks, comments, or statements concerning the Company, its Affiliates, or Protected Parties. Employee further agrees not to take action intended or that would reasonably be expected to harm the reputation of the Company.

5. Notice to Other Parties. Employee shall notify any subsequent employer or other interested party of Employee's obligations set forth in paragraphs 2, 3 and 4 herein, and consents to the Company notifying any subsequent employer or other interested party of Employee's obligations set forth in paragraphs 2, 3 and 4 herein.

6. Definitions. In addition to the definitions otherwise set forth in this Agreement, the following definitions apply to this Agreement:

   a. "Affiliate" means any individual or entity that directly or indirectly (defined herein) controls, is controlled by, or is under common control with the Company.

   b. "Client" includes any person or entity to whom or to which (or through whom or through which) the Company has provided services;

   c. "Competitive Enterprise" means any person or entity that engages in recruiting, executive search, or professional search activities and that conducts business or places individuals for employment within fifty (50) miles of any office of the Company or Company's

Page 3



ATLANTIC GROUP

Affiliates, or any person, business or entity that is a client of the Company, that the Company has solicited for business during Employee's employment by the Company, or that Employee knew or should have known the Company planned to solicit for business.

d.  "Confidential and Proprietary Information" means: (i) communications, data, formulae and related concepts, business plans (both current and under development), profit and loss statements, spreadsheets, contact or distribution lists, lists of and contact information for current, former, and prospective clients, non-public personnel lists, promotion and marketing programs, trade secrets, or any other confidential or proprietary business information relating to development programs, costs, revenues, marketing, trading, investments, sales activities, promotions, credit and financial data, financing methods, research, plans or the business and affairs of the Company; (ii) any information which is to be treated as confidential or non-public because of any duty of confidentiality owed by the Company to a third party; and (iii) any information that Company shall, in the ordinary course, use and not release externally, except subject to restrictions on use and disclosure. "Confidential and Proprietary Information" does not include information that: (iv) is or becomes generally publicly available other than as a result, directly or indirectly (defined herein), of Employee's disclosure or (v) is or becomes available to Employee on a non-confidential basis from a source other than through Company or its representatives; provided that such source is not bound by a confidentiality agreement with the Company or otherwise prohibited from transmitting the information to Employee by a contractual or legal obligation.

e.  "Disparaging" remarks, comments or statements are those that impugn the character, honesty, integrity, morality, business acumen, or abilities of an individual or business entity.

f.  "Indirectly" includes, without limitation, any business or entity with which Employee has an employment, consulting, management, operational, investment, supervisory, partnership, investment or other business relationship. Notwithstanding the foregoing, "indirectly" does not include Employee's direct or indirect beneficial ownership of less than five (5) percent of the voting capital stock of a publicly held corporation.

g.  "Protected Parties" means Richard Scardina, John Ricco and their issue (the "Principals"); any individual or entity that directly or indirectly (defined herein) controls, is controlled by, or is under common control with the Principals; any trust of which any of the Principals is a beneficiary (a "Trust"); and any entity that directly or indirectly (defined herein) controls, is controlled by, or is under common control with, any Trust.

h.  "Restricted Party" means any person who or entity employed or engaged by the Company within eighteen (18) months of Employee's employment by Company.

7.  Injunctive Relief. Employee acknowledges that a breach of Employee's obligations described in paragraphs 2, 3 or 4 of this Agreement cannot be adequately compensated by damages in an action at law and that such breach may cause the Company great and irreparable injury and damage. Accordingly, in the event that Employee breaches paragraph

Page 4



## ATLANTIC GROUP

3 or 4 of this Agreement or there is a threatened breach of paragraph 2, 3 or 4 of this Agreement, then, in addition to any other rights that the Company may have, the Company shall be entitled, without the posting of a bond or other security, to the remedies of injunction, specific performance and other equitable relief to redress any breach, and no proof of special damages shall be necessary for the enforcement of or for any action for breach of my obligations. In the event that an actual proceeding is brought in equity to enforce this Agreement, Employee shall not urge as a defense that there is an adequate remedy at law, nor shall the Company be prevented from seeking any other remedies, including money damages and clawback of payments made to Employee, that may be available. Nothing contained in this paragraph shall be construed as a waiver by the Company of any other rights, including, without limitation, rights to damages or profits.

8. Dispute Resolution; Remedies.

   a. Arbitration.

      i.   Any and all claims and controversies, whether of law or fact, of any nature whatsoever arising from or relating to Employee's employment by the Company, including pursuant to this Agreement or the breach thereof, any offer letter, or (to the extent permissible under applicable law) any compensation arrangement, if not first resolved through mutual agreement of the parties, shall be subject to arbitration through the American Arbitration Association ("AAA") in New York City using an arbitrator selected in accordance with the procedures of the AAA. Notwithstanding the forgoing, the Company reserves the right to seek and obtain equitable relief from a court for a breach or threatened breach of Employee's obligations set forth in paragraph 2, 3 or 4 herein or other breach or threatened breach of any obligation of Employee to the Company that subjects the Company to irreparable or immediate harm.

      ii.  The request for arbitration will set forth the nature of the claim or controversy. The arbitration will be conducted in accordance with the National Rules for the Resolution of Employment Disputes, then prevailing, of the AAA.

      iii. At the request of either party, arbitration proceedings will confidential. In such case, all documents, testimony, and records will be received, heard, and maintained by the arbitrator in secrecy under seal, available for inspection only by the parties and their respective attorneys and experts, who will agree in advance and in writing to maintain such information in secrecy until such information becomes generally known.

      iv.  In the case of arbitration, each party will bear its own expenses incurred in connection with the arbitration, except that the fees and expenses of the AAA and the arbitrator will be borne equally by the parties or as the arbitrator may otherwise order. The opinion and award of an arbitrator hereunder will be in writing, and the award will be final, conclusive, and binding upon the parties.

Page 5



ATLANTIC GROUP

v. Notwithstanding the Company's rights to initiate a proceeding in court to obtain equitable relief for a breach or threatened breach of paragraphs 2, 3 or 4 of this Agreement, the arbitrator will be able to decree any and all relief of an equitable nature, including, but not limited to, such relief as a temporary restraining order or a temporary and/or permanent injunction, and will also be able to award damages, with or without an accounting.

vi. Except as expressly provided in this Agreement, the arbitrator will have no power to add to, subtract from, or modify in any way any of the terms of this Agreement.

b. Waiver of Jury Trial. The parties waive, to the extent permitted by law, all rights they may have to trial by jury, in connection with any claim, action, suit, or proceeding arising out of or relating to this Agreement.

c. Additional Remedies. Employee agrees that, if Employee breaches this Agreement, the Company shall be entitled to an accounting and repayment of all Commissions, Overrides, value of employee benefits, or any other remuneration that Employee directly or indirectly receives or may receive from or in connection with any such breach. Such remedy shall be in addition to and not instead of any injunctive relief, other money damages, or other rights or remedies to which the Company is or may be entitled at law or in equity.

9. Compliance with Other Agreements. Employee represents and warrants that Employee's employment by the Company will not, with or without the giving of notice or the passage of time, conflict with, result in the breach of or the termination of, or constitute a default under any agreement to which Employee is or may be bound. Employee represents and warrants that (other than this Agreement) Employee is not bound by any oral or written agreements that prohibits or restricts Employee from: (a) competing with, or in any way participating in a business which competes with, any former Company or business of Employee; (b) soliciting employees of or consultants to any former Company or business to leave such former Company's employment or to leave such business; or (c) soliciting for business customers of the former Company or business or another business. Employee agrees to indemnify Company for any damages, attorneys' fees, or costs resulting from any breach of Employee's representations and warranties set forth this paragraph.

10. Additional Terms.

a. Acknowledgement of Reasonableness. Employee has carefully read and understands all provisions of this Agreement and, having done so, agrees that all restrictions set forth in this Agreement are fair and reasonable and are reasonably required for the protection of the business and the respective interests of the Company.

b. Reformation; Severability. If any provision of this Agreement is declared by a court of competent jurisdiction or the arbitrator to be invalid, illegal or incapable of being enforced in whole or in part, such provision shall be interpreted so as to remain enforceable to the maximum extent permissible consistent with applicable law. The

Page 6



ATLANTIC GROUP

remaining conditions and provisions or portions thereof shall nevertheless remain in full force and effect and enforceable to the extent they are valid, legal, and enforceable, and no provision shall be deemed dependent upon any other covenant or provision unless so expressed herein.

c.  Waiver; Amendment. The failure of the Company to insist upon the strict performance of any of the provisions of this Agreement shall not be construed as a waiver or relinquishment of future compliance therewith, and such provisions shall remain in full force and effect. This Agreement may be amended and a waiver of any breach of this Agreement may only be granted, in writing that makes express reference to this Agreement as the subject of such amendment or waiver, and that is signed by Employee and, on behalf of the Company, by Richard Scardina.

d.  Entire Agreement. This Agreement constitutes the entire agreement between the parties, and supersedes and replaces all prior agreements between the parties, oral or written, with the respect to its subject matter.

e.  Governing Law; Jurisdiction; Venue. This Agreement shall be governed by, and construed and interpreted in accordance with, the laws of the State of New York without regard to principles of conflict of laws. Except as otherwise provided in this Agreement, Employee, to the fullest extent permitted by law, (i) agrees to submit any legal action or proceeding relating to this Agreement or for recognition and enforcement of any judgment in respect hereof, to the non-exclusive jurisdiction of the courts of the State of New York, the courts of the United States of America located in the Southern District, New York, New York, and appellate courts from any therefor; (ii) consent that any action or proceeding shall be brought in such courts, and waive any objection that employee may now or hereafter have to the venue of any such action or proceeding in any such court; (iii) agree that service of process of any such action or proceeding may be effected by certified mail (or any substantially similar form of mail), postage prepaid, to Employee at the address Employee has last provided to the Company, and service made shall be deemed to be complete upon the earlier of actual receipt or five (5) days after the same shall have been posted as aforesaid; and (iv) agree that nothing herein shall affect the right to effect service of process in any other manner permitted by law.

f.  Assignment; Binding Effect. This Agreement is personal in nature and neither party shall assign or transfer this Agreement or any of its rights or obligations without the consent of the other party. Notwithstanding the foregoing, Employee agrees that the Company may assign this Agreement or otherwise transfer its rights under this Agreement to an Affiliate. This Agreement shall be binding upon and inure to the Company's successors and assigns.

g.  Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original for all purposes.

ATLANTIC GROUP

ACCEPTED AND AGREED:

Jenna Hirsch

3/23/16

Date

# EXHIBIT 2



ATLANTIC GROUP

## PROTECTION OF COMPANY PROPERTY AND AGREEMENT TO ARBITRATE

THIS AGREEMENT ("Agreement") is effective as of March 22, 2016 ("Effective Date") and is between Atlantic Resource Partners, LLC ("Company") and Jenna Hirsch ("Employee") (Company and Employee collectively, "Parties"). In consideration of the promises and mutual covenants contained herein, including without limitation the Company's employment of Employee and Employee's work for the Company, and for other good and valuable consideration, the receipt and sufficiency of which are acknowledged, the Parties agree as follows:

1. Prohibited Activities. While employed with the Company, Employee shall not be employed by, serve as a consultant or advisor to (whether paid or unpaid), invest in (other than a direct or indirect 5% or less passive personal investment in a publicly traded company), prepare to engage in employment or other business activity competitive with the Company, or otherwise engage in any other business or work activity, without the advance written consent of Richard Scardina. The above prohibition shall not include volunteering for charitable organizations, religious activities, engaging in lawful political activities, or the like.

2. Confidential and Proprietary Information. Employee acknowledges that, in the course of employment with the Company, Employee will receive confidential and proprietary information of the Company, its Affiliates (defined herein), its Protected Parties (defined below), and third parties to which the Company has an obligation of confidentiality. Accordingly, during and at all times after Employee's employment by the Company, Employee agrees to keep strictly confidential and not to disclose or make accessible to any other person, firm, corporation or other entity or use for any purpose other than to fulfill Employee's duties to Company, any Confidential and Proprietary Information (defined herein) owned by, or received by or on behalf of, the Company. Employee further agrees as follows:

    a. Protectable Interests; Trade Secrets. Employee acknowledges the trade secret status of the Confidential and Proprietary Information and that the Confidential and Proprietary Information constitutes a protectable business interest of the Company. Employee agrees (i) not to use, access, or allow or help another to use or access (whether for compensation or not) any Confidential and Proprietary Information for the benefit of Employee or others (other than the Company); and (ii) not to take, copy, email, download, or otherwise utilize any material or reproductions (including but not limited to writings, correspondence, notes, drafts, records, invoices, technical and business policies, computer programs or disks) thereof owned, licensed, or otherwise under the control of the Company. The obligations described in this paragraph apply any time during or after Employee's employment by Company, except necessary for Employee to perform Employee's duties for the Company, and then conditioned upon the prompt return of all originals and reproductions thereof (in whatever form).

Page 1



ATLANTIC GROUP

b. <u>Return of Property</u>. Employee agrees, immediately upon the Company's request, and in any event immediately upon termination of Employee's relationship with the Company, to return to the Company all Confidential and Proprietary Information and reproductions (including but not limited, to writings, correspondence, e-mails, notes, downloads, drafts, records, invoices, technical and business policies, computer programs or disks) thereof in Employee's possession or control, including, without limitation, any copies of such Confidential and Proprietary Information that may reside on any computer Employee may access, own or otherwise control (each a "Controlled Computer") or on any computer server used to provide an e-mail mail box (each a "Controlled Mail Box") to which Employee has access pursuant to any Internet or electronic mail service to which Employee subscribes or has access to a subscription (Employee acknowledges for all purposes hereunder that any such Controlled Mail Box shall be deemed to be under Employee's control).

c. <u>Disclosures</u>. At any time, if in any legal or regulatory proceeding Employee is requested or ordered to disclose any of the Confidential and Proprietary Information, whether or not Employee is employed by the Company, Employee will provide the Company with prompt notice so that the Company, whether aided by Employee or as an intervenor, may seek to prevent disclosure or, if that cannot be achieved, the entry of a protective order or other appropriate protective device or procedure in order to assure, to the extent practicable, compliance with the provisions of this Agreement. If a protective order or other remedy satisfactory to the Company is not obtained, Employee will disclose only that portion of the Confidential and Proprietary Information that Employee is advised by counsel is legally required to be disclosed (and will provide a copy of any written memorandum in that connection to the Company or its counsel as part of a common defense), and Employee will exercise Employee's best efforts to obtain a written protective order or other reliable assurance that confidential treatment shall be accorded that portion of the Confidential and Proprietary Information.

3. <u>Protection of Other Company Interests</u>. Employee agrees not to, directly or indirectly, including on behalf of, for the benefit of, or in conjunction with any other person or entity, engage in certain restricted activities as follows:

a. <u>Non-Competition</u>. During Employee's employment and for three (3) months thereafter, regardless of the reason for separation from employment, Employee shall not, directly or indirectly, including on behalf of, for the benefit of, or in conjunction with, any other person or entity: (i) engage in, own, manage, operate, join, control, participate in, invest in (other than a direct or indirect 5% or less passive personal investment in a publicly traded company) or otherwise be connected or associated with, in any manner, including as an officer, director, employee, independent contractor, independent representative, partner, consultant, advisor, agent, proprietor, trustee or investor, any Competitive Enterprise (defined herein).



ATLANTIC GROUP

b. <u>Non-Solicitation; No-Hire; Non-Interference</u>. During Employee's employment and for eighteen (18) months thereafter, regardless of the reason for separation from employment, Employee shall not:

    i.    solicit, assist, advise, influence, induce or otherwise encourage in any way any Restricted Party (defined herein) to separate from his or her employment or consulting relationship with the Company;

    ii.    assist, advise, or encourage any person or entity to solicit, assist, advise, influence, induce or otherwise encourage in any way any Restricted Party to separate from his or her employment or consulting relationship with the Company;

    iii.    employ or retain as a consultant or advisor any Restricted Party;

    iv.    assist any person or entity to employ or retain as a consultant or advisor any Restricted Party;

    v.    interfere with, attempt to interfere with, or assist, advise, or encourage any person with interfering with the relationship between the Company and any Restricted Party.

4. <u>Protection of Reputation</u>. During and at all times after Employee's employment with the Company, regardless of the reason for separation from employment, Employee shall not publish or communicate to any person or entity any Disparaging (defined herein) remarks, comments, or statements concerning the Company, its Affiliates, or Protected Parties. Employee further agrees not to take action intended or that would reasonably be expected to harm the reputation of the Company.

5. <u>Notice to Other Parties</u>. Employee shall notify any subsequent employer or other interested party of Employee's obligations set forth in paragraphs 2, 3 and 4 herein, and consents to the Company notifying any subsequent employer or other interested party of Employee's obligations set forth in paragraphs 2, 3 and 4 herein.

6. <u>Definitions</u>. In addition to the definitions otherwise set forth in this Agreement, the following definitions apply to this Agreement:

a. "Affiliate" means any individual or entity that directly or indirectly (defined herein) controls, is controlled by, or is under common control with the Company.

b. "Client" includes any person or entity to whom or to which (or through whom or through which) the Company has provided services;

c. "Competitive Enterprise" means any person or entity that engages in recruiting, executive search, or professional search activities and that conducts business or places individuals for employment within fifty (50) miles of any office of the Company or Company's

Page 3



ATLANTIC GROUP

Affiliates, or any person, business or entity that is a client of the Company, that the Company has solicited for business during Employee's employment by the Company, or that Employee knew or should have known the Company planned to solicit for business.

d. "Confidential and Proprietary Information" means: (i) communications, data, formulae and related concepts, business plans (both current and under development), profit and loss statements, spreadsheets, contact or distribution lists, lists of and contact information for current, former, and prospective clients, non-public personnel lists, promotion and marketing programs, trade secrets, or any other confidential or proprietary business information relating to development programs, costs, revenues, marketing, trading, investments, sales activities, promotions, credit and financial data, financing methods, research, plans or the business and affairs of the Company; (ii) any information which is to be treated as confidential or non-public because of any duty of confidentiality owed by the Company to a third party; and (iii) any information that Company shall, in the ordinary course, use and not release externally, except subject to restrictions on use and disclosure. "Confidential and Proprietary Information" does not include information that: (iv) is or becomes generally publicly available other than as a result, directly or indirectly (defined herein), of Employee's disclosure or (v) is or becomes available to Employee on a non-confidential basis from a source other than through Company or its representatives; provided that such source is not bound by a confidentiality agreement with the Company or otherwise prohibited from transmitting the information to Employee by a contractual or legal obligation.

e. "Disparaging" remarks, comments or statements are those that impugn the character, honesty, integrity, morality, business acumen, or abilities of an individual or business entity.

f. "Indirectly" includes, without limitation, any business or entity with which Employee has an employment, consulting, management, operational, investment, supervisory, partnership, investment or other business relationship. Notwithstanding the foregoing, "indirectly" does not include Employee's direct or indirect beneficial ownership of less than five (5) percent of the voting capital stock of a publicly held corporation.

g. "Protected Parties" means Richard Scardina, John Ricco and their issue (the "Principals"); any individual or entity that directly or indirectly (defined herein) controls, is controlled by, or is under common control with the Principals; any trust of which any of the Principals is a beneficiary (a "Trust"); and any entity that directly or indirectly (defined herein) controls, is controlled by, or is under common control with, any Trust.

h. "Restricted Party" means any person who or entity employed or engaged by the Company within eighteen (18) months of Employee's employment by Company.

7. Injunctive Relief. Employee acknowledges that a breach of Employee's obligations described in paragraphs 2, 3 or 4 of this Agreement cannot be adequately compensated by damages in an action at law and that such breach may cause the Company great and irreparable injury and damage. Accordingly, in the event that Employee breaches paragraph

Page 4



ATLANTIC GROUP

3 or 4 of this Agreement or there is a threatened breach of paragraph 2, 3 or 4 of this Agreement, then, in addition to any other rights that the Company may have, the Company shall be entitled, without the posting of a bond or other security, to the remedies of injunction, specific performance and other equitable relief to redress any breach, and no proof of special damages shall be necessary for the enforcement of or for any action for breach of my obligations. In the event that an actual proceeding is brought in equity to enforce this Agreement, Employee shall not urge as a defense that there is an adequate remedy at law, nor shall the Company be prevented from seeking any other remedies, including money damages and clawback of payments made to Employee, that may be available. Nothing contained in this paragraph shall be construed as a waiver by the Company of any other rights, including, without limitation, rights to damages or profits.

8. Dispute Resolution; Remedies.

   a. Arbitration.

      i.    Any and all claims and controversies, whether of law or fact, of any nature whatsoever arising from or relating to Employee's employment by the Company, including pursuant to this Agreement or the breach thereof, any offer letter, or (to the extent permissible under applicable law) any compensation arrangement, if not first resolved through mutual agreement of the parties, shall be subject to arbitration through the American Arbitration Association ("AAA") in New York City using an arbitrator selected in accordance with the procedures of the AAA. Notwithstanding the forgoing, the Company reserves the right to seek and obtain equitable relief from a court for a breach or threatened breach of Employee's obligations set forth in paragraph 2, 3 or 4 herein or other breach or threatened breach of any obligation of Employee to the Company that subjects the Company to irreparable or immediate harm.

      ii.   The request for arbitration will set forth the nature of the claim or controversy. The arbitration will be conducted in accordance with the National Rules for the Resolution of Employment Disputes, then prevailing, of the AAA.

      iii.  At the request of either party, arbitration proceedings will confidential. In such case, all documents, testimony, and records will be received, heard, and maintained by the arbitrator in secrecy under seal, available for inspection only by the parties and their respective attorneys and experts, who will agree in advance and in writing to maintain such information in secrecy until such information becomes generally known.

      iv.   In the case of arbitration, each party will bear its own expenses incurred in connection with the arbitration, except that the fees and expenses of the AAA and the arbitrator will be borne equally by the parties or as the arbitrator may otherwise order. The opinion and award of an arbitrator hereunder will be in writing, and the award will be final, conclusive, and binding upon the parties.



ATLANTIC GROUP

v.   Notwithstanding the Company's rights to initiate a proceeding in court to obtain equitable relief for a breach or threatened breach of paragraphs 2, 3 or 4 of this Agreement, the arbitrator will be able to decree any and all relief of an equitable nature, including, but not limited to, such relief as a temporary restraining order or a temporary and/or permanent injunction, and will also be able to award damages, with or without an accounting.

vi.  Except as expressly provided in this Agreement, the arbitrator will have no power to add to, subtract from, or modify in any way any of the terms of this Agreement.

b.  Waiver of Jury Trial. The parties waive, to the extent permitted by law, all rights they may have to trial by jury, in connection with any claim, action, suit, or proceeding arising out of or relating to this Agreement.

c.  Additional Remedies. Employee agrees that, if Employee breaches this Agreement, the Company shall be entitled to an accounting and repayment of all Commissions, Overrides, value of employee benefits, or any other remuneration that Employee directly or indirectly receives or may receive from or in connection with any such breach. Such remedy shall be in addition to and not instead of any injunctive relief, other money damages, or other rights or remedies to which the Company is or may be entitled at law or in equity.

9.  Compliance with Other Agreements. Employee represents and warrants that Employee's employment by the Company will not, with or without the giving of notice or the passage of time, conflict with, result in the breach of or the termination of, or constitute a default under any agreement to which Employee is or may be bound. Employee represents and warrants that (other than this Agreement) Employee is not bound by any oral or written agreements that prohibits or restricts Employee from: (a) competing with, or in any way participating in a business which competes with, any former Company or business of Employee; (b) soliciting employees of or consultants to any former Company or business to leave such former Company's employment or to leave such business; or (c) soliciting for business customers of the former Company or business or another business. Employee agrees to indemnify Company for any damages, attorneys' fees, or costs resulting from any breach of Employee's representations and warranties set forth this paragraph.

10. Additional Terms.

a.  Acknowledgement of Reasonableness. Employee has carefully read and understands all provisions of this Agreement and, having done so, agrees that all restrictions set forth in this Agreement are fair and reasonable and are reasonably required for the protection of the business and the respective interests of the Company.

b.  Reformation; Severability. If any provision of this Agreement is declared by a court of competent jurisdiction or the arbitrator to be invalid, illegal or incapable of being enforced in whole or in part, such provision shall be interpreted so as to remain enforceable to the maximum extent permissible consistent with applicable law. The



ATLANTIC GROUP

remaining conditions and provisions or portions thereof shall nevertheless remain in full force and effect and enforceable to the extent they are valid, legal, and enforceable, and no provision shall be deemed dependent upon any other covenant or provision unless so expressed herein.

c.  Waiver; Amendment.  The failure of the Company to insist upon the strict performance of any of the provisions of this Agreement shall not be construed as a waiver or relinquishment of future compliance therewith, and such provisions shall remain in full force and effect.  This Agreement may be amended and a waiver of any breach of this Agreement may only be granted, in writing that makes express reference to this Agreement as the subject of such amendment or waiver, and that is signed by Employee and, on behalf of the Company, by Richard Scardina.

d.  Entire Agreement.  This Agreement constitutes the entire agreement between the parties, and supersedes and replaces all prior agreements between the parties, oral or written, with the respect to its subject matter.

e.  Governing Law; Jurisdiction; Venue.  This Agreement shall be governed by, and construed and interpreted in accordance with, the laws of the State of New York without regard to principles of conflict of laws.  Except as otherwise provided in this Agreement, Employee, to the fullest extent permitted by law, (i) agrees to submit any legal action or proceeding relating to this Agreement or for recognition and enforcement of any judgment in respect hereof, to the non-exclusive jurisdiction of the courts of the State of New York, the courts of the United States of America located in the Southern District, New York, New York, and appellate courts from any therefor; (ii) consent that any action or proceeding shall be brought in such courts, and waive any objection that employee may now or hereafter have to the venue of any such action or proceeding in any such court; (iii) agree that service of process of any such action or proceeding may be effected by certified mail (or any substantially similar form of mail), postage prepaid, to Employee at the address Employee has last provided to the Company, and service made shall be deemed to be complete upon the earlier of actual receipt or five (5) days after the same shall have been posted as aforesaid; and (iv) agree that nothing herein shall affect the right to effect service of process in any other manner permitted by law.

f.  Assignment; Binding Effect.  This Agreement is personal in nature and neither party shall assign or transfer this Agreement or any of its rights or obligations without the consent of the other party.  Notwithstanding the foregoing, Employee agrees that the Company may assign this Agreement or otherwise transfer its rights under this Agreement to an Affiliate.  This Agreement shall be binding upon and inure to the Company's successors and assigns.

g.  Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original for all purposes.

Page 7

ATLANTIC GROUP

ACCEPTED AND AGREED:

_____          _____
Jenna Hirsch                               Date

# EXHIBIT 3

**From:** Jenna Hirsch [mailto:hirsch.jenna@gmail.com]
**Sent:** Tuesday, January 10, 2017 8:56 AM
**To:** John Ricco
**Cc:** Natasha Moore; Richard Scardina
**Subject:** Re: Thank You

Of course I intend to abide by the law. I would never do that and have no malicious intent.

Sent from my iPhone

On Jan 10, 2017, at 8:26 AM, John Ricco <jricco@atlantic-grp.com> wrote:

> Unfortunate – Best of luck Jenna.   I do have to say please review your employee docs especially the parts regarding non-compete and non-solicit.  It would be unfortunate to hear about any TAG info pertaining to candidates and clients being discussed at JSB as we will find out.
>
> Thanks,
> John
>
> <image001.jpg>
> John Ricco CPA, Partner
> 19 West 34th Street – Suite 806
> New York, NY 10001
> 212-271-1181 Direct
> jricco@atlantic-grp.com
> www.atlanticrecruiters.com
>
> <image002.png>

1

**From:** Jenna Hirsch [mailto:hirsch.jenna@gmail.com]
**Sent:** Tuesday, January 10, 2017 8:22 AM
**To:** John Ricco; Natasha Moore; Richard Scardina
**Subject:** Thank You

John, Rich & Natasha,

I just want to thank you for all the help and guidance each of you have given me and for what
you've taught me at TAG. I just want to reach out and let you know that I have decided to resign
- my reason for leaving is purely business and not personal.

I wish you all the best and hope to stay in touch.

Thanks again.

Jenna


Jenna Hirsch
917.361.0422

# EXHIBIT 4

## FW: Information

Inbox x

**Eva Minsteris** <eem@isbpartners.com>
to me

Sep 12

Hi Jenna – You came highly recommended by David B so I wanted to reach out. When are you available to come talk to us? Do you have a resume prepared by chance? Thanks and I look forward to hearing from you.

Thanks,

Eva

**Eva Minsteris, CPA**
Senior Managing Director
747 Third Avenue, 15th Floor
New York, NY 10017
P. 212-750-7007
eem@isbpartners.com
www.isbpartners.com

-----Original Message-----
From: David Buziashvili [mailto:davidbuziashvili@gmail.com]
Sent: Monday, September 12, 2016 2:59 PM
To: Eva Minsteris <eem@isbpartners.com>
Subject: Information

Hi Eva,

See you on Friday. In the meantime I wanted to let you know I spoke to my former colleague Jenna, she's interested in speaking to you guys.

Her cell is (917) 361-0422

Her email is Hirsch.Jenna@gmail.com

Best,
David

Sent from my iPhone

**Jenna Hirsch** Hi Eva, Thanks for reaching out... next week would be best. How late are you th...   Sep 12

**Eva Minsteris** Hi Jenna - We usually work until 6pm so a 5pm meeting would probably be the l...   Sep 12

Thanks,

Eva

**From:** Jenna Hirsch [mailto:hirsch.jenna@gmail.com]
**Sent:** Wednesday, September 14, 2016 2:35 PM
**To:** Eva Minsteris <em@jsbpartners.com>
**Subject:** Re: Information

**Jenna Hirsch** Hey Eva! Sure, I would be open to that. I'm available Wed this week, otherwis...

**Eva Minsteris** Great – that works for me. Can we shoot for Wed 6:15/6:30pm at Wollensky Gr

**Jenna Hirsch** Sounds good!

**Jenna Hirsch** Sorry Eva, I'm out sick today. Are you around next week? Sent from my iPhone

**Eva Minsteris** No problem – I can do next Tuesday or Thursday. Please let me know. From: Je

**Jenna Hirsch** Thursday works! 6pm?

**Eva Minsteris** Perfect! Feel better! From: Jenna Hirsch [mailto:hirsch.jenna@gmail.com] Sent

**Jenna Hirsch** <hirsch.jenna@gmail.com>
to Eva ⌄

thanks. EVERYONE in this office is sick!

btw, you should reach out to Lindsay Raider

**Jenna Hirsch** (but don't tell her I told you told)

**Eva Minsteris** Do you have Lindsay's email? From: Jenna Hirsch [mailto:hirsch.jenna@gmail.co

**Jenna Hirsch** l.raider@atlantic-grp.com I know she isn't happy, not sure if she's looking

**Eva Minsteris** I won't – I promise! I pinged her on LinkedIn and said ... I heard good things

**Jenna Hirsch** she has only been there for a few months, I would recall her about an existing d

# <u>EXHIBIT 5</u>

To: Joseph Barr <jgb@lsbpartners.com>
Subject: Re: Hi

Jenna Hirsch <hirsch.jenna@gmail.com>
to Susan

i told him i wanted to think about it and this is what he said

Nov 14

---

Jenna Hirsch  Well, would it be possible to wait a few months? i am awaiting some large pay...

Nov 14

---

Joseph Barr
to me

I totally understand what you are saying in terms of your money. That issue will likely be there no matter when you leave ( having money owed you ) according to you are submitting.

I think the a good idea would be as follows:

At my cost I can have your offer letter and employment agreement reviewed by my lawyer who is an expert in employment law and has dozens and dozens of recruiting firms as client ( your firm is not a client of his ).

You can speak to him and see what he has to say about your potential claim regarding your likelihood of getting paid.

We can take a trip together to the NYS Department of Labor ( they are down town ) and meet a representative from the employment standards department and he/she can explain your rights to you and the obligations for your current firm to pay wages/commissions.

Once we conclude this exercise ( it won't take too long ) you will likely to in a better position to understand your rights and the law.

It is a CRIMINAL OFFENSE IN NYS STATE TO WITHOLD WAGES/COMMISSIONS AND THE FIRM IS SUBJECT TO TRIPPLE DAMAGES. Firms to not like to mix it up with the Department of Labor.

In addinon, as December is a relatively slow month it is a good time to transition. This is not a deadline but I think it makes good sense.

Eva and I and the rest of the team will TAKE GOOD CARE OF YOU!

Please give this some thought.

Joe

From: Jenna Hirsch [mailto:hirsch.jenna@gmail.com]
Sent: Monday, November 14, 2016 1:49 PM

Jenna Hirsch  very pushy

Nov 14

**From:** Jenna Hirsch [mailto:hirsch.jenna@gmail.com]
**Sent:** Monday, November 14, 2016 1:49 PM

Jenna Hirsch <hirsch.jenna@gmail.com>

to Susan ⌄

very pushy

Jenna Hirsch <hirsch.jenna@gmail.com>

to Eva, Joseph ⌄

just had a chat with Dane who is a good friend of mine.

I'd like to come in and meet again. how does next week look for you guys, or will we have to wait until post-thanksgiving?

Jenna Hirsch   do you have a few minutes to chat on the phone?

Joseph Barr   Yes I do. I can be reached at 212 750 7007. Sorry for the delay in getting ba...

Jenna Hirsch   point #6...he made a grammatical error but yeah

Jenna Hirsch   thanks, no worries! I will call you in 10.

Joseph Barr

to me ⌄

k

**From:** Jenna Hirsch [mailto:hirsch.jenna@gmail.com]
**Sent:** Wednesday, November 16, 2016 2:47 PM

Joseph Barr  Yes I do. I can be reached at 212 750 7007. Sorry for the delay in getting ba...

**Jenna Hirsch** <hirsch.jenna@gmail.com>

to dane.taylor929

point #6...he made a grammatical error but yeah

Jenna Hirsch
917 361 0422

———— Forwarded message ————
From: Joseph Barr <jsb@lsbpartners.com>
Date: Mon, Nov 14, 2016 at 1:23 PM
Subject: Hi
To: "hirsch.jenna@gmail.com" <hirsch.jenna@gmail.com>

Jenna,

Thank you for coming by to see us last week. I thoroughly enjoyed our meeting and I think you would be very successful at

I wanted to put in writing some things we can offer you day 1.

1.  50% payout day 1

2.  Ability to work clients day 1 and any client you bring in you will be paid 50% or EVEN IF YOU NEED SOME HELP AND



Joseph Barr  My pleasure. From: Jenna Hirsch [mailto:hirsch.jenna@gmail.com] Sent: Thursda...

Jenna Hirsch  why haven't you poached Joe Pitimo? I love him

Joseph Barr

to me

Our focus now is YOU.  Once you get settled here we are happy to talk to him and to the extent you help us make it happen yo

From: Jenna Hirsch [mailto:hirsch.jenna@gmail.com]
Sent: Thursday, November 17, 2016 12:30 PM
To: Joseph Barr <jsb@jsbpartners.com>
Subject: Re: Schedule

Joseph Barr  Is he "poachable"? Sent from my iPhone From: Jenna Hirsch [mailto:hirsch.jen...

Jenna Hirsch <hirsch.jenna@gmail.com>

to Joseph

not sure haha  i love him though  so we will have to try!

Click here to Reply or Forward

2.43 GB (16%) of 15 GB used
Manage

Terms - Privacy

FILED: NEW YORK COUNTY CLERK 01/17/2017 03:08 PM
NYSCEF DOC. NO.    Case 1:17-cv-01718-KPF    Document 1-1    Filed 03/08/17    Page 60 of 66

INDEX NO. 650238/2017

RECEIVED NYSCEF: 01/17/2017

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

ATLANTIC RESOURCE PARTNERS,
LLC d/b/a THE ATLANTIC GROUP,

                       Plaintiff,

      - against -

JSB PARTNERS, LLC and JENNA
HIRSCH,

                 Defendants.

Index No.: 650238/2017

**EMERGENCY AFFIDAVIT OF
KEVIN J. O'CONNOR, ESQ.**

     **KEVIN J. O'CONNOR**, being duly admitted to practice before the Courts of New York does affirm under penalty of perjury as follows:

     1.    I am a shareholder with the firm of Peckar & Abramson, P.C., attorneys for plaintiff, Atlantic Resource Partners, LLC d/b/a The Atlantic Group ("Atlantic Group") against defendants, JSB Partners LLC ("JSB Partners") and Jenna Hirsch ("Hirsch") ( collectively "Defendants"), in the captioned action. I submit this Emergency Affirmation in support of Atlantic Group's application by way of Order to Show Cause for a temporary restraining order as against Defendants.

     2.    This case concerns a former employee of Atlantic Group, Hirsch, who blatantly violated her employment agreement that she entered into with Atlantic Group, which contained confidentiality, non-competition, and non-solicitation agreements (the "Agreement"), as well as her duty of loyalty, by secretly attempting, directly and indirectly through JSB Partners, to "poach" other employees of Atlantic Group in an effort to unfairly compete with Atlantic Group and destroy its business and through the misappropriation of proprietary and confidential information.

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

3.     The enclosed Verified Complaint (with exhibits) and my affirmation dated January 17, 2017, provide detail concerning the myriad reasons for the relief sought, which includes an Order:

(a)     using any confidential data concerning Atlantic Group and its clients, prospective clients and/or candidates obtained by Hirsch during her employment at Atlantic Group;

(b)     soliciting contracts and/or business with any clients of Atlantic Group with whom Hirsch had any prior dealings with while employed by Atlantic Group, pending the hearing on Atlantic Group's application for a preliminary restraining order;

(c)     destroying any and all information in their possession, custody, or control which pertains to Atlantic Group and/or its clients or candidates, obtained by them during Hirsch's employment at Atlantic Group;

(d)     soliciting or recruiting any current Atlantic Group employees to work at JSB Partners in violation of the Agreement; and

(e)     destroying any computer evidence in their possession, custody, or control which pertains to Atlantic Group, Atlantic Group's clients, candidates, prospective candidates, business, or any contacts between JSB Partners and any current or past customers of Atlantic Group, whether such data exists on computer, tablet, iPhone, blackberry, PDA, or in any other form of medium.

4.     As detailed in the accompanying papers, Hirsch, acting in collusion with JSB Partners, has run completely roughshod over Atlantic Group and has completely ignored her statutory and contractual duties as a former employee of Atlantic Group, necessitating the relief sought herein.

5.     The emails and text messages already recovered from Hirsch's former computer at Atlantic Group clearly demonstrate that Hirsch and JSB Partners colluded to poach certain Atlantic Group employees and that Hirsch made attempts to solicit Atlantic Group clients and search candidates to move their business to JSB Partners. It is believed that Hirsch used Atlantic Group's confidential and proprietary information including, but not limited to, trade secrets; and valuable confidential business information such as confidential

LAW OFFICES

Peckar &
Abramson

A Professional Corporation

customer lists, pricing lists, vendor lists, business plans, training materials, recruitment strategies, client solicitation templates, non-public personnel lists and other valuable data, to perpetuate Defendants' scheme to unfairly compete with Atlantic Group.

6.    I am unaware whether Defendants are represented in this matter by an attorney.

7.    Today, January 17, 2017, I sent a letter to Hirsch and Joseph Barr ("Barr"), JSB Partners' Chief Executive Officer, via email, informing them that Atlantic Group has commenced this action against them and that my office intends to appear before this Court today to file the instant motion seeking a temporary restraining order. A copy of that correspondence, without attachments, is attached hereto as **Exhibit 1**.  I did not receive any response from either Hirsch or Barr.

8.    No prior application for the equitable relief sought herein has been made.

**WHEREFORE**, for all the reasons set forth above, Affiant respectfully prays that the provisional remedy sought by Atlantic Group be granted.


Dated: New York, New York
       January 17, 2017

                                            */s/ Kevin J. O'Connor*
                                            Kevin J. O'Connor, Esq.

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

# EXHIBIT 1

## Vento, Joseph

| | |
|---|---|
| **From:** | Vento, Joseph |
| **Sent:** | Tuesday, January 17, 2017 11:02 AM |
| **To:** | 'jsb@jsbpartners.com'; 'jh@jsbpartners.com' |
| **Cc:** | O'Connor, Kevin J. |
| **Subject:** | Atlantic Resource Partners, LLC v. JSB Partners, LLC, et al., Index No.: 650238/2017 |
| **Attachments:** | (Filed) Summons and Complaint.pdf; (Filed) Complaint Ex 1.pdf; 0137_001.pdf |

Mr. Barr and Ms. Hirsch:

On behalf of Kevin J. O'Connor, Esq., please see the attached correspondence and attachments. Please forward same to your legal representative and have him/her contact us at his/her earliest convenience.

Best regards,

**P&A**

**Joseph M. Vento**
**Peckar & Abramson, P.C.**
**70 Grand Avenue**
**River Edge, NJ  07661**
**phone: 201.343.3434**
**fax: 201.343.6306**
**JVento@pecklaw.com**
**www.pecklaw.com**

**NOTICE:** This e-mail message and any attachment to this e-mail message contain confidential information that may be legally privileged. If you are not the intended recipient, you must not review, retransmit, convert to hard copy, copy, use or disseminate this e-mail or any attachments to it. This e-mail is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521 and is legally privileged. The information contained in this e-mail is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this e-mail in error, please notify us immediately by return e-mail. Please note that if this e-mail message contains a forwarded message or is a reply to a prior message, some or all of the contents of this message or any attachments may not have been produced by Peckar & Abramson, P.C. The typewritten signature included with this e-mail is not an electronic signature within the meaning of Electronic Signatures in Global and National Commerce Act or any other law of similar import, including without limitation, the Uniform Electronic Transactions Act, as the same may be enacted in any State.



# Peckar & Abramson
A Professional Corporation • Attorneys & Counselors at Law

**www.pecklaw.com**

70 Grand Avenue
River Edge, NJ 07661
tel. 201.343.3434
fax 201.343.6306

New York, NY
Los Angeles, CA
San Francisco Bay Area, CA
Washington, D.C.
Miami, FL
Chicago, IL
River Edge, NJ
Austin, TX
Dallas, TX
Houston, TX
Devon, PA

**International
Alliances**

Beijing
Bogota
Buenos Aires
Guatemala City
Lima
London
Managua
Mexico City
Panama City
Port of Spain
San Jose
San Salvador
Santiago
Sao Paulo
Tegucigalpa
Vancouver

*Kevin J. O'Connor*
*Partner*

## VIA EMAIL & PERSONAL SERVICE

January 17, 2017

Joe Barr, CEO
JSB Partners
747 Third Avenue, 15th Floor
New York, NY 10017

Jenna Hirsch
21-67 33rd Street, Apt 4C
Astoria, NY 11105

Re:     **Atlantic Resource Partners, LLC v. JSB Partners, LLC, et al.**
          **Index No.: 650238/2017**
          **Our File No.: 4470/155710**

Dear Mr. Barr and Ms. Hirsch:

This law firm has been retained by Atlantic Resource Partners, LLC d/b/a The Atlantic Group ("Atlantic Group") in order to protect its interests with respect to certain unlawful and tortious actions taken by you both.

On Friday, we commenced an action against you both in the Supreme Court of New York in and for the County of New York. A copy of the Verified Complaint is enclosed. Please be aware that we intend to appear in Court today in order to file a motion for a temporary restraining order ("TRO").

Please let this letter also serve as a Legal Hold Notice and we ask that you review it and promptly take action to ensure that you preserve any and all information that is required to be preserved. You both have obligations to preserve any and all documents and tangible evidence pertaining to Ms. Hirsch's resignation from Atlantic Group and re-employment at JSB Partners, LLC. This includes not only all paper documents but also all electronically stored information ("ESI"). All ESI must be preserved in its native electronic format, regardless of whether hard copies of the information also exist.

**All documents, records, electronic files, email, or other materials in any way related to Atlantic Group's business or JSB Partners' decision to and hiring of Ms. Hirsch should not be deleted or destroyed. All regular document**



# Peckar & Abramson
A Professional Corporation Attorneys & Counselors at Law

Mr. Joe Barr, CEO
Ms. Jenna Hirsch
Janaury 17, 2017
Page 2

**destruction, archiving, and back up tape deletion activities pursuant to JSB's records retention policy also must be suspended until further notice.**

It is imperative that any documents that need to be stored are clearly marked as to custodian (owner of the document) and location from which they came and that all related meta-data, passwords and access hardware and software are retained. Documents must be stored in such a manner as to preserve their integrity and safe keeping. JSB's duty to preserve evidence is ongoing and applies equally to any applicable paper or electronic documents created after receipt of this letter. All computers, cell phones, smart phones, or similar devices belonging to employees who separate from employment must also be saved and labeled with custodian information. If any employees have worked from home and stored ESI on their home computer, or have kept documents at their home, such documents and ESI also must be preserved.

Any laptops, tablets, cell phones, smartphones, blackberries, pdas, or other electronic storage devices of any kind, should be preserved in their current state.

Your immediate task and responsibility is to identify the universe of employees, including those in JSB Partners' Information Technology ("IT") Department, who may possess or control relevant documents and storage devices subject to this preservation. Our client has already identified several employees that may possess or control relevant documents and storage devices subject to this preservation. Each of these employees is being sent a copy of this Legal Hold Notice. The names of those employees are: Barry Taitz, Elizabeth Fried, Eva Minsteris and Brad Chalupa.

If you identify any other employees, please distribute to each of them a copy of this legal hold notice. Failure to preserve documents that we may be required to produce in the ensuing litigation may result in serious fines or other penalties. <u>It is thus crucial that any such measures be taken now.</u>

Lastly, you are hereby advised to put your Employment Practices Liability carrier on notice of pending litigation arising from the above issues.

Thank you for your attention to this matter. I can be reached at (201) 343-3434 Ext. 2205 or koconnor@pecklaw.com, should you have any questions.

Very truly yours,

KEVIN J. O'CONNOR
KJO:jmv

RIVEREDGE-#481386v1-